## Hodnett's Estate.    O'Reilly's Appeal.

*Will —Legacy—Charity—Trust—Act of April 26, 1855.*

A gift will not be deemed charitable merely from the nature of the professional character of the devisee.

Testatrix by a codicil to her will, executed two days before her death, gave one half of the residue of her estate " to the Pastor of the St. John's R. C. Church of Altoona, Pa." There was nothing in the evidence to show that the pastor of the church was present when the codicil was executed, or that he had been consulted, or that any communication had been made to him by testatrix respecting the legacy, or her wishes in regard to it. ·Held, that, in the absence of any evidence of facts or circumstances tending to establish a trust for either religious or charitable uses, the legacy was a personal bequest to the pastor of the church, and not affected by the act of April 26, 1855, making void bequests to charitable uses executed less than one calendar month before the death of the testator.

It seems that the case would be different if the devisee had induced testator to give the estate absolutely under a promise, either express, or implied by silence, that he would perform the trust.

Argued April 19, 1893.   Appeal, No. 461, Jan. T., 1893, by Rev. N. J. O'Reilly, legatee, from decree of O. C. Blair Co., June T., 1893, distributing estate of Ellen Hodnett.   Before STERRETT, C. J., GREEN, MITCHELL, DEAN and THOMPSON, JJ.

Adjudication of account of N. J. O'Reilly and M. E. Buckley, executors of Ellen Hodnett, deceased.

The account was referred to A. J. Riley, Esq., as auditor, from whose report appear the facts as stated in the opinion of the Supreme Court.

The auditor awarded one half of the residue to the Rev. N. J. O'Reilly, pastor of the St. John's R. C. Church of Altoona, Pa., as a personal legacy unaffected by a trust, citing Evangelical Association's Ap., 35 Pa. 316; Knight's Est., 28 W. N. 265, and Weiss's Est., O. C. Phila., unreported.   An exception to the award by the heirs of testatrix was sustained by the court and the money awarded to the heirs, in an opinion by KREBS, P. J.

*Errors assigned* were to above decree.

*E. H. Flick*, for appellant.—It was not denied on the other side that if the pastor had been named, the bequest was good. So the question is still to be treated as to whether the language used was sufficiently personal to distinguish the bequest from one "in trust for religious or charitable uses."   She described no trust, designated no use, directed no purpose and named no charity; it was a bequest to "the pastor of St. John's Church," and that was Father O'Reilly.   It was for him and to be at his own disposal.   He was free to apply it to his personal wants, or to bestow it upon any charitable object.   It was an unconditional, personal bequest: Thomas v. Howell, 18 L. R. Eq. 198; 1 Pomeroy Eq. Jur. 558; 2 Redfield on Wills, 505; 1 Jarm. on Wills, 401–2; Knight's Est., 28 W. N. 265; Weiss's Est., O. C. Phila., not published.

*Martin Bell*, for appellees.—The gift to the pastor of the St. John's Roman Catholic Church, of Altoona, is a gift to a charity.   It is therefore void: Price v. Maxwell, 28 Pa. 35.

The cases cited by appellant's counsel do not apply.   Knight's Est., 23 W. N. 265, was decided on the ground that the purpose of the paper, whose editor was given the legacy, was not charitable.

It is fair to assume that in Weiss's Estate, "the sister of the Divine Infant, at the Convent of the Good Shepherd," was the religious name of Lena Schrouder, the devisee, and that she was individuated and identified by that name.

In the devise in Doe d. Phillips v. Aldridge, 4 T. R. 264, the minister was expressly named, "Rev. A. A.," and the gift to him was sustained because the additional words, which it was argued created a trust, were simply words of expectation, precatory, but not binding.

The act of April 26, 1855, was intended to remove all temptation to the least approach to overpersuasion or importunity: Reimensnyder v. Gans, 110 Pa. 20.

OPINION BY MR. CHIEF JUSTICE STERRETT, May 8, 1893:

This contention arose in the distribution of $1,015.26, representing net residuary personal estate of Mrs. Ellen Hodnett who resided in Altoona and died there, testate, on July 8, 1888. The eighth clause of her will as originally published is as follows: "The rest, residue and remainder of my estate I give and bequeath to the Passionist Monastery at Pittsburgh, Pa." Two days before her decease she executed the following codicil thereto: "Now, 6 July 1888, as a codicil to the foregoing will, I direct the portion directing my executors to procure a chalice to be omitted from the said will, as I have already purchased one myself; and further I direct that the residue and remainder, if any, shall go to the Franciscan Brothers of Altoona, Pa., and to the pastor of the St. John's R. C. Church of Altoona, Pa., in equal parts or shares instead of to the Passionist Monastery of Pittsburgh, Pa."

It is conceded that this operated as a revocation of the residuary clause above quoted; and, as to the moiety of the residuary estate thus given to the "Franciscan Brothers of Altoona, Pa.," it is also conceded that the codicil is void, under the provisions of the act of April 26, 1855.  The only question is whether the other moiety, given to "the pastor of the St. John's R. C. Church of Altoona, Pa.," is a personal gift or bequest, in

his own right, to Rev. N. J. O'Reilly, the appellant, who, at date of the will, and also at the death of testatrix, was the pastor of said church, or whether it was given to him, not in his own right, but in trust for religious or charitable uses, and therefore void under the act of 1855. The learned auditor, holding that it was a personal gift to appellant, in his own right, awarded one half of the fund to him and the residue to the next of kin of the testatrix, according to the intestate law; but the orphans' court, sustaining exceptions to the auditor's report, awarded the whole fund to said next of kin. In this it is alleged there was error, and that is the sole question presented for our consideration.

It is conceded that when the will became operative, by testatrix's death, appellant was the pastor of the church specified in the codicil, and hence the fact that he is the 'legatee described therein cannot be doubted.

There is nothing in the will to indicate that the bequest is, or was ever intended to be, in trust for any religious or charitable use; nor is there, dehors that instrument, a scintilla of evidence of any such trust. The auditor says, in substance, there is no evidence that appellant was present when the codicil was executed, or had been consulted, in relation thereto, by testatrix or anyone in her behalf, or that he even knew he was to receive a legacy thereunder, nor was there any evidence of any communication whatever between him and testatrix, at any time prior to her decease, in relation to the bequest, or in regard to her wishes respecting the same; and, in summing up on this point, he finds : " There is nothing in the case to indicate or show that the legacy in question was given in trust to ' the pastor of the St. John's R. C. Church,' . . . . or that such pastor should devote this particular legacy to charitable or religious uses or purposes."

It is suggested, however, that the existence of a trust for religious or charitable uses may be inferred from the official designation or description of the legatee, as " the pastor of the St. John's R. C. Church," etc.—that it is a gift to the ecclesiastical officer, in charge of that particular church, and not to the person who happened to be the incumbent of the office when the will took effect, and therefore it must be regarded as a gift for the benefit of the church and in ease of the congregation worshiping therein, etc.

There would be force in this position if the legatee were an artificial being, having but one character, and that charitable, but where, as in this case, the donee is a natural person, having interests of his own, distinct from those which appertain to his ecclesiastical office as pastor of the church, it is quite different. As is said in 1 Jarman on Wills, 193, " a gift will not be deemed charitable merely from the nature of the professional character of the devisee, or on account of the testator's having accompanied the gift with an expression of his expectation that the devisee would discharge the duties incidental to such a character, however intimately those duties may concern the welfare of others, as this merely denotes the motive of the gift, and not that the devisee is to take otherwise than beneficially."

In Schultz's Appeal, 80 Pa. 396, the testator, wishing to bequeath his estate to charitable uses, was told it would be invalid if he should die within a month, but that he might give it unconditionally to some person whom he could trust to carry out his wishes. Reuben Yeakle, bishop of the religious denomination to which the testator belonged, was selected, and an absolute bequest was made to him. Within a month thereafter the testator died and Bishop Yeakle, being informed of his death, and of his wishes respecting the property thus bequeathed, said he would carry them out. It was held by this court that, in the circumstances, the bequest was not within the act of 1855, and consequently there was nothing to fasten a trust upon the devisees. After referring to the facts and reciting the 11th section of the act, Mr. Justice SHARSWOOD said : " It seems very clear that the bequest . . . . to Reuben Yeakle is not within the words of the statute. There is nothing in the circumstances to fasten a trust upon him. The statute out of the way, the charities intended to be benefited would have no claim, legal or equitable, to enforce payment by him to them. He would, in the eye of the law, be guilty of no fraud, legal or equitable, either against them or the testator, if he should, even at this day, change his intentions and apply the money to some other use. Being the absolute owner, under the will, the declaration of his intention would not be binding upon him. It is not, therefore, in the words of the statute, a bequest ' to a body politic or to any person in trust for religious or charitable uses.' Had Reuben Yeakle been present when the will was executed,

or the objects of the bequest been communicated to him before
the testator's death, and had he held his peace, there would
have been some ground for fastening a trust upon him ex male-
ficio, as in Hoge v. Hoge, 1 Watts, 163. But nothing of that
kind can be pretended here." In reply to the position that the
whole plan was "nothing but a contrivance to evade the stat-
ute," he further said: "No doubt such was the intention of
the testator. It is said that is a fraud upon the law, and the
bequest ought therefore to be declared void. But that over-
looks the fact that the absolute property in the subject of this
bequest was vested in the legatee, and that he is entirely inno-
cent of any complicity in the fraud of the testator. If the stat-
ute is practically repealed by this construction it is evident that
it must be for the legislature to devise and apply a remedy, not
the judiciary, whose province is not jus dare but jus dicere."

It is scarcely necessary to say that the statute cannot be
evaded by any secret trust for charitable or religious uses.
Anyone interested may compel the legatee or devisee to dis-
close any promise made by him, or facts within his knowl-
edge, tending to prove the existence of such secret trust; and
if he denies such promise, etc., proof thereof may be made ali-
unde. As is said in 1 Jarman on Wills, *233, this doctrine
evidently assumes that the trust, if legal, would have been
binding on the conscience of and might have been enforced
against the legatee or devisee; and this ground failing the
rule does not apply. "As where a testator after devising lands
by a will duly attested, declares a trust in favor of charity by
an unattested paper or by parol, the statute law, which affords
to the donee a valid defence against any claim on the part of
the charity, of course defends him against the claim of the heir,
founded on the charitable trust. The case would be different,
however, if the devisee had induced the testator to give him
the estate absolutely under an assurance that the unattested
paper was a sufficient declaration of the trust for a charity, or
under a promise, either express or by silence implied, that if
the estate were devised to him he would perform the trust;
and, generally, it is immaterial whether the promise be made
before or after the execution of the will."

Other authorities to the same effect might be cited, but those
above referred to are sufficient. It follows from what has been

said, that, in the absence of any evidence, facts or circumstances, tending to fasten upon appellant a trust for either religious or charitable uses, he is entitled as legatee, in his own right, to one half of the fund. If the testatrix had died more than one month after making the codicil, and the legacy had been paid over to him, without objection, there is nothing in the will itself nor in anything that has been shown aliunde that would afford the slightest ground on which the congregation, of which he is pastor, or any religious or charitable organization or association in any way connected therewith, could even hope to succeed in holding him as a trustee of the fund so received. The bequest to him was therefore not void under the provisions of the statute.

As to one half of the net fund for distribution, the decree of the orphans' court is reversed; and it is now adjudged and decreed that the sum of five hundred and seven $\frac{53}{100}$ dollars, awarded to the heirs of testatrix, be paid to N. J. O'Reilly, the appellant, and that the costs of this appeal be paid by the said heirs, the appellees.