# O'Connor et al. *v.* O'Connor, Appellant, et al.

*Res judicata—Parties—Privies—Parties to judgment—General effect of prior adjudication—Relevant matters.*

1. Whenever the parties to a suit are bound by the findings and decree in a prior proceeding, their privies in the earlier action are also bound thereby.

2. All persons are privies to a judgment whose succession to the rights of property adjudicated or affected is derived through or under some one of the parties to the action. To render a decree conclusive it need not be against one by name; it is enough that it is against his interest.

3. The binding effect of a prior adjudication is not defeated by minor differences of form, parties or allegations in the later proceeding, nor by a shuffling of plaintiffs on the record thereof, nor by a change in the character of the relief sought thereby; and such prior adjudication concludes not only the issue actually decided, but also all relevant ones which might have been raised and passed upon.

4. The binding effect of a former adjudication applies with the same strictness when the new cause of action, while not technically

the same as the old, is nevertheless so related thereto that some matter essential to a recovery in the new proceeding was in fact determined in the earlier one.

5. The binding effect of a prior adjudication on the merits, is not defeated by the fact that, in the later suit, it is endeavored to obtain only some of the things sought to be recovered in the former.

*Trust and trustees—Agreement to accept trust—Wills—Fraud.*

6. No trust, aside from that expressed in a will, can be seated upon a gift to a legatee or devisee, unless he has expressly or tacitly agreed thereto.

7. No person can claim an interest under a fraud committed by another. However innocent the party may be, if the original transaction is tainted with fraud, that taint runs through the derivative interest, and prevents anyone from claiming under it.

Argued October 3, 1927. Before FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

Appeal, No. 114, March T., 1927, by Margaret B. O'Connor, widow of J. J. O'Connor, deceased, from decree of O. C. Cambria Co., Dec. T., 1925, No. 2, on bill in equity, in case of Peter J. O'Connor et al. v. Margaret B. O'Connor et al. Reversed.

Bill to declare a trust in real estate and for a conveyance. Before EVANS, P. J.

The opinion of the Supreme Court states the facts.

Decree for plaintiffs. Margaret B. O'Connor appealed.

*Error assigned,* inter alia, was decree, quoting record.

*Philip N. Shettig,* with him *F. J. Hartman* and *Charles A. Poth,* for appellant.—This case is res judicata: Leahey v. O'Connor, 281 Pa. 488; Nernst Lamp Co. v. Hill, 243 Pa. 448; Hochman v. Finance Corporation, 289 Pa. 260.

*Wm. M. Hall,* for appellees.

OPINION BY MR. JUSTICE SIMPSON, November 28, 1927:

By testator's will he gave his residuary estate to his wife absolutely, and appointed Peter J. Little and R. Edgar Leahey as his executors. The will, and an agreement signed by testator, his widow and Mr. Leahey (hereinafter set forth at some length), were together probated by the register of wills as decedent's disposition of his property; but the decree of the orphans' court sustaining this action was reversed by us, and the probate of the agreement was vacated and set aside: O'Connor's Est., 273 Pa. 391. Our order did not affect the probate of the will itself, which remains undisturbed to this day.

Later, Mr. Leahey filed a bill in equity against the widow, seeking specific performance of the agreement referred to. He averred therein that he had not made Mr. Little a party, because the latter, though named in the agreement as trustee, had declared he would not accept the trust. Mr. Little denied this, however, and, having been given leave to intervene, filed a cross-bill, renewing and amplifying the averments of the original bill, and stating that testator made his will "in consideration of the execution by his said wife of the agreement [above referred to] and in reliance upon her good faith and willingness......to fully perform and carry out the same......[and that she] by her voluntary execution and delivery of said agreement......induced [testator] to make and publish his will devising the residue of his estate" to her. He also averred that there were prior wills and agreements, which he quoted, of substantially the same character, and executed under substantially similar circumstances. The widow answered the bill and cross-bill; testimony was taken, the court below found the facts, stated its conclusions of law and decreed the dismissal of both bills at the costs of the respective plaintiffs. On appeal to this court, we specifically approved those findings and conclusions, and affirmed the decree: Leahey v. O'Connor, 281 Pa. 488.

Nearly a year later, the present bill in equity was filed by the collateral heirs of testator, against the widow and the two trustees, in the main repeating the averments of the preceding bills, basing their claim on the same agreement, and seeking to have a decree entered to the effect that, as the widow is claiming the whole estate under the will, she must abide by and carry out the terms of the agreement. They did not ask a decree regarding the personalty, which they averred was under the sole jurisdiction of the orphans' court, but did as to all the realty, which they alleged was not. The widow and Leahey answered; Little did not. The widow's answer was substantially the same as in the prior proceedings, with the addition that she recited the findings and decree therein, and averred that they were conclusive here, under the doctrine of res adjudicata. The court below overruled this, and all the other contentions made by her, and decreed that she held the real estate, derived by her under testator's will, one-half for herself, and the other half in trust for plaintiffs, as collateral heirs of testator, and directed her to convey to them the one-half to which they were thus found to be entitled. From that decree she prosecutes the present appeal. As we are clearly of opinion that her defense of res adjudicata should have been sustained, it is not necessary to consider the other points raised.

The agreement recites that the widow, in consideration of testator's making of his will, "stipulates and agrees [with testator] ...... to constitute and appoint and ...... hereby does constitute and appoint Peter J. Little and R. Edgar Leahey her trustees and attorneys in fact ...... [and] agrees to turn over to [them] the full and complete management of said estate, and authorizes them to sell, convey and dispose of the same as they shall deem proper and advantageous, be the property real, personal or mixed [with certain exceptions not necessary to be repeated], ...... and for the purposes of making the agreements between the parties here-

to effective, that she, for herself, her heirs, executors, administrators and assigns, will execute and deliver to [them] or to their successors in the trust, proper deeds of conveyance or bills of sale......to the intent that the residue of said estate shall be distributed to the collateral heirs......[of testator, that the trustees] may distribute [the income not payable to the widow] unto those who would be classed as collateral heirs......at their [the trustees'] discretion,......and after the death of the [widow], all the rest and residue of the estate which may come into or accumulate in their hands, considering any and all amounts due from any and all of said heirs as advancements. Should any collateral heir be deemed unfit or unworthy, said trustees and attorneys-in-fact shall be at liberty to act in such circumstances as if they were distributing their own funds, and such unworthy or unfit collateral heir shall receive nothing from said estate if said trustees and attorneys-in-fact so decide." This agreement was signed by testator, his widow, and Mr. Leahey, but not by Mr. Little.

This résumé of its provisions clearly establishes the fact that, even if we assume the agreement to be valid and enforceable, the collateral heirs never will be entitled to a conveyance from the widow. Whatever conveyances are to be made by her, are to be to the trustees, or their successors in the trust, who are to distribute the surplus income of the estate "at their discretion," and, after the death of the widow, are to make a final distribution of both principal and accumulated income, not to *all* the collateral heirs, but only to those who, at that time, shall not "be deemed unfit or unworthy" [evidently by the trustees], they being "at liberty to act in such circumstances as if they were distributing their own funds, and said unworthy or unfit collateral heir shall receive nothing from said estate, if said trustees ......so decide." The collateral heirs were given, therefore, only a *possible* interest in the corpus of the estate,

conditioned on their fitness at the time of final distribution, and whatever rights, if any, they have, must be worked out through the legal title directed to be conveyed to the then trustees, who had the duty, if they believed the agreement to be valid, of endeavoring to enforce it, as they did in the prior proceeding, for the benefit of those who should ultimately be found entitled.

It follows that there was privity of estate between the trustees and the collateral heirs, and, insofar as the trustees are estopped by the findings and decree in the prior proceeding, the collateral heirs are also, for such findings and decrees are res adjudicata as against privies as well as parties: Loyal Orange Institution v. Morrison, 269 Pa. 564; Hochman v. Mortgage Finance Corporation, 289 Pa. 260. This binding effect of the prior adjudication is not "defeated by minor differences of form, parties or allegations, [nor] by a shuffling of plaintiffs on the record, or [nor] by a change in the character of the relief sought,......[and concludes] not only the issues actually adjudicated in the first proceeding, but also those [relevant ones] which might have been raised and passed upon": Hochman v. Mortgage Finance Corporation, supra, pages 263-4.

That plaintiffs herein are privies in estate to the trustees, is not an open question. As said by Judge HARE, approved by this court, in Appeal of Third Reformed Dutch Church, 88 Pa. 503, 505: "Judgments not only bind parties but privies, or, in other words, persons who, though not actually before the court, are yet in contemplation of law represented by those who appear or have been duly summoned." "Privies are those whose relationship to the same right of property is mutual or successive. In other words, privity denotes mutual or successive relationship to the right of property, title or estate. It may be in blood, in law, or in estate": Strayer v. Johnson, 110 Pa. 21, 24. "All persons are privies to a judgment, whose succession to the rights of property adjudicated or affected, are derived through or

under some one of the parties to the action......To render a decree conclusive it is not necessary to be against one by name; it is enough that it is against his interest": Newbold's Est., 65 Pa. Superior Ct. 151, 155. Hence, as stated in Peterson v. Lothrop, 34 Pa. 223, 228: "The equitable owner of a chose in action is estopped by the verdict and judgment [in a suit by or against the legal owner], even though not named, in the same manner as though he had been a party on the record."

Indeed, plaintiffs recognize this privity in the prayers of their bill, for, in the second thereof, they ask that the widow be directed to make conveyances in accordance with the terms of the so-called agreement, and in the third, that the trustees be directed to hold the conveyances for the benefit of the collateral heirs. In an attempt to escape the binding effect of the prior adjudication, the court below avoided the necessary inference flowing from that admission, by decreeing a direct conveyance by the widow to the collateral heirs; but in so doing, it fell into a still more grievous error, for it undertook thereby to ignore a vital part of the agreement itself, and to give the half interest to the collateral heirs at the present time, though testator plainly expressed his intention that this should not be done until after the death of the widow, and then that those "deemed unfit and unworthy......shall receive nothing." Assuming the agreement to be effective for any purpose, this provision is alike binding upon the court, as upon everybody else. If it had violated some statute or policy of the law, it might have been thus ignored; but, as this was not the case, no one has the right to say that, because testator wished the widow to have but part of his estate, the balance may be given forthwith, in whole or in part, to those who are not now, and may never be entitled to it.

It does not appear to be seriously contended but that this suit must necessarily fail, if, as we have stated the law to be, plaintiffs are bound by the findings and de-

cree in the prior action; yet it may not be amiss to quote a few of those findings. The trial judge there held, inter alia, the court in banc approved, and we affirmed the following: "Upon the whole case the conclusion is inevitable that the wife's signature to the agreement of April 8, 1920, was obtained by her husband's gross betrayal of a generous and long cultivated confidence, with the result that the agreement is fraudulent and cannot be enforced against her......Evidently anticipating such a conclusion, the plaintiff, in the cross-bill contends......that if the defendant is not bound by the agreement, she nevertheless is not entitled to hold the estate given her by the will, but must reject the will with the agreement, and turn over to the trustees all of the estate, except such as she may claim by the intestate laws......It is the theory of the cross plaintiff that the will and the agreement, both dated April 8, 1920, together formed a contract, in which the will, devising the residuary estate to the defendant, was the consideration for her promise, contained in the agreement, to convey the greater part of the estate to the trustees for the benefit of testator's collateral relatives. But there was no contract. The defendant's signature, for the accommodation of her husband, of a paper the contents of which were unknown to her, and were intentionally concealed from her by the testator, resulted in no contract. The will was in no sense a consideration for her signature, for she knew nothing of its provisions, or that it was in any way connected with the paper she was asked to sign. She did not ask the testator to make a will of any sort, or induce him to do so by signing the agreement. She did not deceive or mislead him by her signature, for he knew that she did not, and intended that she should not, know what she was signing. Furthermore, the testator seems to have believed, as his attorney certainly believed, that the defendant would not be bound by the agreement. He intended that the agreement should not be recorded, but should be kept secret, as it could not

have been, if it was to be used to compel the performance of the alleged contract. He relied, for the defendant's performance of the provisions of the agreement, not upon any supposed legal obligation created by it, but on her expected voluntary submission to his wishes, when she should ascertain them after his death. She is not now rescinding any contract, but is defending her rights under her husband's duly probated will, resisting the plaintiff's efforts to deprive her of them by means of an alleged contract to which she never gave assent, and by which she cannot be bound. She is acting upon her husband's assurance, voluntarily pledged after he had seen her sign the treacherous agreement, that he had given her his entire estate......Now, the plaintiffs ask a court of equity to destroy the testator's will, give the lie to his voluntary assurance to his wife, and make his attempted fraud effective, partially, at least, if not absolutely. There can be no hesitation over the answer to such a request. If the devise to the defendant had been induced by any act of hers, by disavowing such act she would be held to waive the benefit obtained by it. But the making of the will, although mentioned in the agreement as the consideration therefor, was not so in fact, because the defendant did not know what either the will or the agreement contained, or that they were in any way related to each other." As a result of these findings the trial judge in that case concluded, the court in banc approved and we affirmed, that "(1) The defendant is not bound by the agreement of April 8, 1920, and cannot be compelled to carry out its provisions. (2) The will of [testator] vests in the defendant, Margaret B. O'Connor, the entire residuary estate......unencumbered by any trust, and unaffected by any agreement. (3) The plaintiffs have no standing in a court of equity to set up the agreement of April 8, 1920, to which the defendant's signature was obtained by concealment and fraud, to defeat her title under the testator's voluntary will."

Though nothing more would seem to be required of us, perhaps a few other matters should be referred to. The court below thought that the questions here in issue were not adjudicated in the prior case, because we there refused to pass upon the right to partition as prayed for in Mr. Little's cross-bill. An attentive consideration of our opinion (Leahey v. O'Connor, 281 Pa. 488, 494-5) shows, however, that we planted our decision on the basic principle that the cross-bill fell with the original one, when the "chancellor found [the alleged agreement] to be fraudulent and void. As there was no contract, it follows that Little was not a trustee thereunder, and, hence, had no standing to raise the issues which he sought to have adjudicated; consequently, the court below might have dismissed the cross-bill without deciding more than was necessary under the averments of the original bill and answer,—that is to say, the issues as to alleged fraud; and, when they were found in favor of defendant, the chancellor need only have determined their legal result, namely, that plaintiffs had no right to the relief sought,—or, in other words, no right to enforce the alleged contract against defendant." What the court below relied on in the present case, were the additional reasons why the cross-bill in that case could not be sustained; it erred in supposing that those reasons invalidated the basic findings which dominated our opinion.

So, also, the contention of plaintiffs that a distinction exists between the prior suit and this one, because there it was sought to have the fraudulent agreement enforced as against both the real and personal estate given by testator's will to his widow, while here it is sought as against the realty only, cannot possibly be sustained. The will gives both to the widow, and the agreement signed by her, if valid, binds both kinds of property in her hands, as effectually as it does either one. It has been conclusively determined that it is of no validity whatsoever. Indeed, this contention would fail for the

additional reason that res adjudicata "applies with the same strictness when the cause of action, while not technically the same, is nevertheless so related to the cause in the prior litigation that some matter, the establishment of which is essential to the recovery in the second, was determined in the first": Bowers's Est., 240 Pa. 388, 390; Shaffer v. Wilmore Coal Co., 246 Pa. 550, 552; Havir's Est., 283 Pa. 292, 298.

Nor does it make any difference what testator thought his widow would do. By the will, the property was given absolutely to her, and no trust can be seated on it, unless she expressly or tacitly agreed to hold it for the collateral heirs: Schultz's App., 80 Pa. 396, 403; Flood v. Ryan, 220 Pa. 450; Bickley's Est., 270 Pa. 101. Here, it is conclusively determined that she made no such agreement.

Nor is it of any moment that the fraud attempted to be practiced on the widow, was not the fraud of plaintiffs herein, but of testator. "No person can claim an interest under a fraud committed by another. However innocent the party may be, if the original transaction is tainted with fraud, that taint runs through the derivative interest, and prevents any party claiming under it": Stirk's Est., 232 Pa. 98, 110.

The decree of the court below is reversed, and plaintiffs' bill in equity is dismissed at their costs.