## In re Franklin Trust Company

*Freeman, Fox & Steeble,* for exceptants.
*Bernard J. Kelley,* contra.

SMITH, P. J., May 26, 1937.—The Franklin Trust Company was named originally as corporate trustee under an indenture of mortgage dated March 1, 1928, which mortgage secured an issue of bonds in the sum of $1,500,000 and was a first lien on premises known as The Cambridge Apartments. Upon the appointment of a receiver for the Franklin Trust Company, The Pennsylvania Company for Insurances on Lives and Granting Annuities was appointed successor corporate trustee by the Court of Common Pleas No. 3, and the said Pennsylvania Company as such corporate trustee demanded of the receiver of the

Franklin Trust Company the sum of $7,920 which the Franklin Trust Company had received prior to its closing on October 6, 1931, which demand was refused. The mortgage provided that the owner of the premises should pay to the corporate trustee, in monthly instalments, due in advance, the funds necessary to meet the coupons as the same fell due.

In Homan et al., Receivers, v. First National Bank, 316 Pa. 23, 25, the court said:

"Appellee admits that it is established that where there are no circumstances or contractual provisions other than a deposit of money in a bank, with a direction to pay the same to coupon holders upon presentation of their coupons, the fund is not impressed with a trust and can be withdrawn at any time by the depositing corporation, and concedes that this principle is laid down in Re Interborough Consol. Corp., 288 Fed. 334; Noyes v. First Nat. Bank of New York, 188 App. Div. 162, 167, affirmed in 224 N. Y. 542, 120 N. E. 870; Staten Island Cricket & Baseball Club v. Farmers' Loan & Trust Co., 41 App. Div. 321, 58 N. Y. Supp. 460, and Erb v. Banco di Napoli, 243 N. Y. 45".

We therefore must ascertain whether the Franklin Trust Company was a trustee with duties to perform other than merely paying the money deposited to the coupon holders.

The mortgage named the Franklin Trust Company of Philadelphia as corporate trustee and provided that each month the mortgagor should pay to the corporate trustee, for the account of the bondholders, a sum of money to meet the bonds at maturity. The bonds named the Franklin Trust Company of Philadelphia as corporate trustee and provided that coupons may be collected through the corporate trustee. The habendum of the mortgage provides that the mortgaged property shall be held:

"In trust, nevertheless, for the equal and proportionate benefit and security of all present and future holders of said bonds and coupons".

The mortgage provides that the mortgagor must pay monthly, "regardless of the time of presentation or surrender of any of said bonds or coupons . . . to the Corporate Trustee, at Philadelphia, Pennsylvania, for the account of bondholders, a further sum of money which shall be equal to one-sixth of the principal of the bonds then maturing," with a similar provision for the payment of interest. The mortgage provides further that "The provisions [regarding the payments] are for the purpose of creating funds with which to meet payments of principal and of interest as they respectively become due from the mortgagor", and that "all payments made through or to the Corporate Trustee in Philadelphia, Pennsylvania, shall satisfy said obligation pro tanto." The mortgage further provides that "The Corporate Trustee shall pay all bonds and/or interest coupons presented for payment to it to the extent of funds theretofore deposited with it for each purpose and the Corporate Trustee shall withdraw all sums received by it pursuant to the foregoing provisions . . . only for the payment of the items for which said sums were respectively paid to the Corporate Trustee."

The mortgage further provides that "When and as each of the payments of principal and of interest shall be made to the Corporate Trustee . . . the liability of the mortgagor with respect thereto shall be discharged, and the holders of the bonds or coupons covered by such payments shall look for payment thereof solely to the funds in the hands of the Corporate Trustee, and shall cease to be entitled to the benefit of this Indenture on account of said bonds or coupons to the extent of such payment."

The mortgage further provides that after the payment of the bonds the premises shall revert to the mortgagor, "but only upon receipt by the Corporate Trustee from the mortgagor of all paid bonds and coupons . . . and upon receipt by the Corporate Trustee of funds necessary to pay bonds called for redemption but not previously

presented and surrendered", and that the Corporate Trustee "shall prepare and execute proper instruments releasing, satisfying and discharging the lien of this Indenture." Another provision of the mortgage is to the effect that all redeemed bonds shall be canceled and cremated by the corporate trustee.

From the language of the mortgage and the bonds it is clear that the corporate trustee had active duties to perform in addition to paying the money for the bonds or coupons surrendered, and that the mortgagor could not have withdrawn the money once it had been deposited with the corporate trustee.

In The Rogers Locomotive & Machine Works v. Kelley et al., 88 N. Y. 234, money was deposited with brokers to meet the payment of interest coupons and the brokers receipted for the deposit "in trust, to apply the same to an equal amount of the coupons . . . in the order in which such coupons shall be presented to us for payment . . . the said money not to be subject to the control of said company, otherwise than for the payment of said coupons". The court held that the transaction was an absolute appropriation by the obligor for the uses named in the receipt, and that the intention was clearly indicated in the receipt, and defendant by its acceptance bound themselves to perform, and further that "the corporation parted with all control of the fund, inconsistent with the trust declared in the receipt. The possession was transferred to the trustees, subject only . . . that they should pay the coupons in the order of presentation".

In Austin-Nichols & Co., Inc., v. Union Trust Co. et al., 289 Pa. 341, 348, the court said:

"If there be a valid deposit created for the benefit of a third party, the cestui que trust has a standing to enforce the obligation assumed: Willis v. Curtze, 203 Pa. 111; Dolph v. Cross, 153 Iowa 289, 133 N. W. 669. The latter may demand that there be a proper administration of the fund (Fallon's App., 42 Pa. 235; 28 C. J. 120), and the trustee must make distribution in the manner

agreed upon: Benedict & Eberle Co. v. Hollman, 68 Pa. Superior Ct. 155. . . .

"A placing of securities in escrow for the benefit of a third party will protect the latter as against creditors (Sexton v. Kessler, 225 U. S. 90) ; so will the express appropriation of a fund to a certain use, as in the case of moneys deposited solely to pay dividends declared by a corporation, though the checks for the stockholders are drawn by the company (Interborough Case, 288 Fed. R. 334) ; and the same is true where the money has been clearly set aside for the payment of bond coupons: Rogers Locomotive Works v. Kelley, 88 N. Y. 234."

As to the question whether, if the exception is allowed, the funds should be paid to the Pennsylvania Company as successor corporate trustee or to the individual coupon holders direct, the mortgage provides that if the corporate trustee shall be removed it shall execute an assignment and vest in the new trustee the trusts herein expressed; and since the Pennsylvania Company, as successor corporate trustee, by decree of court, has succeeded "to all the powers, duties, rights, interests, title, liberties, immunities and privileges of said Franklin Trust Company in and under said Indenture of Mortgage", and in view of the necessity of preserving the coupons which will have been paid so that the trust mortgage, upon final payment, may be satisfied of record, and the indefinite time when the oustanding coupons may be surrendered for payment, if this exception and claim for preference is allowed at all, payment thereof should be made to the Pennsylvania Company as successor corporate trustee and not to the individual holders of coupons.

The question arises whether the funds have been sufficiently identified and traced.

To meet the coupons and matured bonds, The Cambridge Building Corporation, owner, which had no bank account or deposit account with the Franklin Trust Company, on or before September 1, 1928, March 1, 1929, September 1, 1929, March 1, 1930, September 1, 1930,

March 1, 1931, and September 1, 1931, drew its checks on various dates on its own bank account with the Tradesmens National Bank & Trust Company of Philadelphia to the order of "Franklin Trust Company" in the aggregate of $230,925.01, and the Franklin Trust Company collected said checks. Twenty of these checks, aggregating $207,350, were deposited directly by Franklin Trust Company in its own "Trust Department" account and were not deposited in either of the two "Trust Fund Accounts" which it maintained, one with the Pennsylvania Company and the other with the Bankers Trust Company. Two checks were deposited by the Franklin Trust Company in the "Trust Fund Account" it maintained with the Pennsylvania Company, in the aggregate of $23,575.01. Immediately prior to the respective dates when said coupons by their terms became due and payable, the trust officer of the Franklin Trust Company prepared, and as trust officer signed, a Franklin Trust Company check drawn on the Franklin Trust Company by which the funds needed for the purpose were withdrawn from its trust department and made available to its banking department, for the payment of the said coupons. As to the funds deposited by the Franklin Trust Company in its "Trust Fund Account" in the Pennsylvania Company, the Franklin Trust Company withdrew, by its check on the Pennsylvania Company immediately prior to the due dates of the said coupons, the funds needed for such purpose, and opened on its own books the accounts hereinafter referred to. When the Banking Department of the Franklin Trust Company, either by checks drawn on its own trust funds or by the checks drawn on the "Trust Funds Accounts" with the Pennsylvania Company, received the funds needed to pay the coupons, it opened accounts on its books as follows:

"Cambridge Apartments, September 1, 1928,
Coupon Account"
"Cambridge Apartments, March 1, 1929,
Coupon Account"

"Cambridge Apartments, September 1, 1929,
Coupon Account"
"Cambridge Apartments, March 1, 1930,
Coupon Account"
"Cambridge Apartments, September 1, 1930,
Coupon Account"
"Cambridge Apartments, March 1, 1931,
Coupon Account"
"Cambridge Apartments, September 1, 1931,
Coupon Account"

To each account it credited the funds received and thereafter paid all coupons due and presented for payment, up until October 6, 1931, on which date the Secretary of Banking took possession of the business of the Franklin Trust Company, and also on which date there remained unpaid, in all of said coupon accounts, the total sum of $7,920. From the date of the opening of the said coupon accounts until the date of its closing, the Franklin Trust Company had cash on hand sufficient to meet the payments of all the coupons for which it had opened accounts, and from September 1, 1931, until October 6, 1931, the Franklin Trust Company had cash on hand sufficient to pay in full said sum of $7,920. Said sum of $7,920 had been received by the Franklin Trust Company from The Cambridge Building Corporation under the terms of the mortgage and had not been paid out by the Franklin Trust Company solely because the coupons had not been presented for payment before October 6, 1931, on which date this fund remained in possession of the Franklin Trust Company and augmented the funds which the receiver of the Franklin Trust Company now has. It is this $7,920 which exceptant claims and for which it asks a preference.

In Cameron v. Carnegie Trust Co., 292 Pa. 114, the Ottumwa National Bank sent to the Carnegie Trust Company a note for collection and remittance only. The bank was not a depositor of the trust company and the latter institution was then insolvent. Despite its insolvency, the

trust company accepted the note, received its amount in cash, and mingled the fund so received with its other funds, and sent to the bank a draft on the Colonial Trust Company for the amount of the collection. The draft was presented for payment but was refused, as the Secretary of Banking, in the meantime, had declared the Carnegie Trust Company insolvent. The court said, at page 118:

". . . the least it could properly have done would have been to immediately set apart the cash received in a separate and distinct account, in the name of and payable to the bank only. Not having done either of these things, the trustee became a trustee ex maleficio as to the money received and mingled with its own funds: Christy v. Sill, 95 Pa. 380; Freiberg v. Stoddard, 161 Pa. 259, 262; Corn Exchange National Bank v. Solicitors Loan & Trust Co., supra."

In Webb v. Newhall, Assignee, 274 Pa. 135, the brokers of Webb sold at his direction stock and deposited the proceeds in their general banking account. The brokers sent Webb a statement of the transaction and their check on the Pennsylvania Company, their bankers. Payment was refused because in the meantime the brokers made a general assignment to Newhall for the benefit of creditors. The court said, at page 137:

"The brokers received the money in question as agents for plaintiff, without authority to use it as their own, and he did not lose his title thereto by its deposit in their bank account, so long as it could be traced. In such case it is the identity of the fund, not of the pieces of coin or bank notes, that controls: Farmers' and Mechanics' Bank v. King, 57 Pa. 202."

As recited in Reicheldifer's Appeal, 115 Pa. Superior Ct. 454, 460:

"In the case of Montagu et al. v. Pacific Bank et al. (Cal.), 81 F. 602, 604, money was deposited in one bank to the account of another, with directions to the latter to pay the amount to a third bank. The court, in the course

of its opinion, said: 'It is clear from this evidence that the bank had received, through its agent in New York, prior to its suspension, the deposit in question for transmittal to the Puget Sound National Bank, and that it was a special deposit, made for a specific purpose, and in the nature of a bailment.' The bank to whose credit this money was deposited suspended before making payment as directed. The court held that the deposit was in the nature of a bailment, that the plaintiff had never parted with title to the money, and, consequently, it was entitled to recover in full as against general creditors."

Also, on page 461, it is set forth:

"In Peak v. Ellicott (Kan.), 1 Pac. 499, a bank received money from the maker of a note originally given to the bank before it was due, to pay it to the holder and return the note. The bank appropriated the money and failed to pay the note. It was held that upon the subsequent failure of the bank, the maker could reclaim the money from the bank's assignee in trust for creditors. Chief Justice Horton, in the course of his opinion, stated: 'When the bank, through its cashier, accepted the $782.50, it was not paid by the plaintiff as a deposit, nor accepted by the latter as a deposit, nor was the relation of debtor and creditor between the bank and the plaintiff created by the transaction. On the other hand, as respects this specific fund, the relation between the plaintiff and the bank must be regarded as that of principal and agent. After the bank received this sum to satisfy the note of the plaintiff, the bank held the money in a fiduciary capacity. If the money was not applied, according to the understanding of the parties, to the satisfaction of the note, it should have been returned to the plaintiff. It was not deposited to be checked out or to be loaned or otherwise used by the bank. In law, the bank held it as a trust fund, and not as the assets of the bank.'

"In Titlow v. Sundquist (Wash.), 234 F. 613, Sundquist brought a suit against the receiver of the bank to recover moneys alleged to have been deposited under an

express agreement between the parties that the bank would pay it to one Smith in satisfaction of a note executed to her for $1,200. Before the matter was consummated, the bank failed. The court held that the money left by Sundquist with the bank was deposited for a specific purpose, and under an express agreement the bank was to execute this purpose, that the bank held the money in trust. The result was that it did not pass to the general creditors of the insolvent bank, and on the failure of the bank to execute the trust, the owner of the money was entitled to recover."

In Reicheldifer's Appeal, supra, Elizabeth T. Reicheldifer, on October 5, 1931, through her agent the Manayunk Trust Company, sold and assigned a mortgage she held to Abbie P. Alexander, for $1,524.50. Abbie P. Alexander transferred $1,000 from her saving fund account on October 6, 1931, and $524.50 from her checking account on October 7, 1931, in the Manayunk Trust Company, both of which sums were placed in the miscellaneous account on the latter date, for the express purpose of setting this sum aside for appellant. On the same date a check was drawn by the trust company on the miscellaneous account, in favor of Elizabeth T. Reicheldifer, for $1,524.50. This check was in due course presented to, but not paid by, the trust company, owing to the closing of its doors for business on Tuesday, October 13, 1931, Monday being a bank holiday. There was deposited in the miscellaneous account at all times from the date of the payment of the $1,524 to the time of the closing of the trust company more than sufficient to pay Elizabeth T. Reicheldifer the amount due her. The court held that she was entitled to a preference, and said, at page 456:

"It is stated in 3 R. C. L. page 556: 'Ordinarily, depositing money in a bank creates betwen the bank and the person credited therewith the relation of debtor and creditor. It is a contract relation which cannot be created without the consent or acquiescence of both parties. The relation cannot be created by a third person, without author-

ity, express or implied, in that regard, depositing in a bank money to the credit of another. Such a deposit is not binding upon the latter unless, with knowledge of the fact,.he consents thereto or acquiesces therein, or by his conduct becomes estopped to deny the authority to make the deposit. It follows that a person making an unauthorized deposit under such circumstances thereby converts the fund, and is guilty of a conversion. The relation thus tortiously created between the bank and the owner of the money—the person to whose credit the unauthorized deposit is made—is clearly not that of debtor and creditor, but the bank, as to such person, stands in the position of one receiving and holding the property of another without his authority or consent, and hence without warrant of law; therefore, the deposit does not become the property of the bank. . . .

"The trust company never had any title to this money, it was not part of its assets, and there is no good reason in law or in equity why the appellant's property should be applied to pay the trust company's depositors. . . .

"The appellant's right can not be prejudiced by the contention of the appellee that this matter was simply a bookkeeping transaction. In the case of People v. City Bank of Rochester, 96 N. Y. 32, the bank had discounted certain notes for a firm, a depositor. This firm wished to anticipate the payment of the notes, and gave to the bank its checks for the amount of the notes, which checks the bank received and charged in the firm account, and entries were made in the bank books to the effect that the notes were paid. The firm at the time supposed that the bank held the notes, but they had, in fact, been previously sold by it. Before the notes became due, the bank failed. The firm made an application to the court, requiring the receiver to pay the notes out of the funds in his hands, which the court ordered. The court held that the object of the transaction was to provide a fund for the payment of specific notes; thus a trust was created. The court there said: 'From that moment the bank was bound to

hold the money for, and to apply it to, that purpose, and no other, or, failing to do so, return it to the petitioner. As to it, the bank was bailee or trustee, but never owner. It is estopped from saying that all this is matter of book-keeping. It assumed a duty, and the receiver as its representative is bound by it.' "

In Cameron v. Carnegie Trust Co., supra, the court, at page 120, quoted the citation from 3 Pomeroy's Equity Jurisprudence (4th ed.), sec. 1048(e) pp. 2384, 2387, 2388, as follows:

" 'If the beneficiary can show that the trustee's estate, as it came into the hands of his assignee, trustee in bankruptcy, receiver, executor [or] administrator, was *actually increased* by the whole or a definite portion of the misappropriated trust fund, justice demands that he, and not the other creditors, should have the benefit of this increase. The creditors have no right to make a profit by their debtor's breach of trust.'

" 'It is now the well settled rule, that where withdrawals from the mixed fund, with or without subsequent replenishing from the trustee's individual money, have not at any time reduced the balance to a sum less than the trust fund deposited, the cestui que trust, as against the trustee's creditors, is entitled to repayment in full; his money is sufficiently identified as having always been contained within the blended fund.' "

Regarding the duty of the Franklin Trust Company to segregate these trust funds, the Act of May 9, 1889, P. L. 159, cl. II, provides:

"That whenever such companies shall . . . be directed to execute any trust whatever, the capital of the said company shall be taken and considered as the security".

Clause V provides:

"The said companies shall keep all trust funds and investments separate and apart from the assets of the companies, and all investments made by the said companies as fiduciaries shall be so designated as that the trust to which such investment shall belong shall be clearly known."

The amendment of April 11, 1929, P. L. 512, cl. V, provides:

"That funds held in trust, awaiting . . . distribution, may be used by the trust company in the conduct of its business, if it shall first set aside in the trust department bonds or notes of the United States, or the Commonwealth of Pennsylvania, or other securities approved by the Secretary of Banking, of par value equal to or in excess of such trust funds, and, in the event of the failure of such trust company, the owners of the funds held in trust awaiting . . . distribution shall have a lien for the amount of such trust funds on the bonds, notes or other securities so set apart, in addition to their claim against the estate of the trust company".

The Franklin Trust Company, as corporate trustee under the indenture of mortgage, did not comply with the above acts of assembly.

On the occasion of the opening of each of the seven Cambridge Apartments coupon accounts, as of September 1, 1928, March 1, 1929, September 1, 1929, March 1, 1930, September 1, 1930, March 1, 1931, and September 1, 1931, until October 6, 1931, the Franklin Trust Company had in cash on hand money sufficient to meet the payments of all the coupons for the payment of which it had opened said accounts, and from September 1, 1931, to October 6, 1931, the Franklin Trust Company likewise had cash on hand sufficient to pay in full the said sum of $7,920. As was said in Cameron v. Carnegie Trust Co., supra, at pages 120, 121.

". . . the effect of refusing relief would be to give to other distributees a larger sum than they would have received but for the fraud practiced on appellant. In view of this, to rule in appellee's favor would be to make the fraud successful, whereas to refuse so to do could not possibly result in legal harm to anyone. Hence, we again state, what is and always should be fundamental, that no one, however innocent he may be, will be permitted to benefit by the wrongdoing of another, if the result will be

to make effective the injury to the person wronged, and it is equitably possible to prevent such a result: Stirk's Est., 232 Pa. 98, 110; O'Connor v. O'Connor, 291 Pa. 175."

In Erie Trust Company's Case (No. 1), 326 Pa. 198, the Supreme Court, through Justice Stern, said:

". . . the view which presently prevails in most jurisdictions is that the cestui que trust must identify the trust res by tracing it into some *specific* funds or assets of the bank, the problem remaining to determine *how* specifically the commingled fund must be differentiated from the general assets.

". . . in *Mehler's Appeal*, 310 Pa. 25, . . . it was again ruled that the beneficiary of the trust must identify the proceeds of the converted assets as contained in some specific fund or property in the possession of the company at the time it is taken over by the receiver, and the trust attaches only to the lowest balance in the fund at any time during the period between the placing of such proceeds therein and the closing of the company.

"It may be stated, then, to be the law in Pennsylvania, that it is not sufficient for a cestui que trust merely to show that the general assets of the trustee have been increased by an unauthorized appropriation of trust property, but he must also identify the trust res by tracing it into some specific property, funds or assets."

We feel that the trust fund in the instant case has been sufficiently identified and traced and that the lowest balance in the fund at any time during the period between the placing of such proceeds therein and the closing of the company was sufficient to pay this claim, and that therefore the claim for preference should be allowed.

### Decree

And now, to wit, May 26, 1937, it is ordered and decreed that the exception of The Pennsylvania Company for Insurances on Lives and Granting Annuities is sustained, and a preference is allowed The Pennsylvania Company for Insurances on Lives and Granting Annuities

as successor corporate trustee in the sum of $7,920, and the money is directed to be paid to the said Pennsylvania Company as successor corporate trustee.