## Isoleri's Estate

*Thomas J. Mullaney*, for accountants; *George Maxman*, for heirs at law.

HENDERSON, J., February 6, 1934.—The testator died April 11, 1932, leaving a will duly probated April 19, 1932. . . .

By the second, third, and fourth items of his will, the testator made certain

specific bequests to certain Italian churches, and as he died within 30 days, these bequests are void and fall into the residuary estate and will be awarded to the residuary legatee, Umberto Biga.

By the fifth item of the will he directed the sale of his City of Philadelphia bonds and gave $200 to St. John's Orphan Asylum, $200 to St. Vincent's Orphan Asylum, $200 to St. Joseph's Orphan Asylum for Girls, $400 to the Columbus Hospital, and the balance to the Church of St. Mary Magdalene di Pazzi of Philadelphia. He then directed that:

"In the event that I should die within thirty days from the date of the execution of this will, then in that event I give and bequeath the said Philadelphia City Bonds to my executors hereinafter named absolutely."

By the sixth item, he gave all money in bank as follows: One fourth to the College of Foreign Missions Brignole Sale, Genova, Italy, for masses as therein set forth; one fourth to the new Carmelite Convent of St. Mary Magdalene di Pazzi for masses as set forth therein; one fourth to the New Seminary of Albenga, also for masses, and the remaining fourth to his nephew Agostino Isoleri. He then directed that:

"In the event that I should die within thirty days from the date of the execution of this will, then in that event I give and bequeath the first three fourths of my money in bank to my executors hereinafter named absolutely."

By the eighth item, he gave his residuary estate to Rev. Umberto Biga of the Church of Santo Stefano at Villanova d'Albenga, Italy.

He then named as executors Rev. Joseph Pugliese, Rev. John D. Daniel, and Basil Charles Donato.

He died on the day the will was executed.

It is contended that, the gifts to charitable, educational, and religious uses being void, the gifts over under the fifth and sixth clauses of the will are also void, because of an alleged secret trust whereby the three legatees are bound to apply these funds to the void uses, and because the alternative gifts to the executors were not to them beneficially.

The testator sent for William A. S. Lapetina, a member of this bar, and his friend and attorney, and gave him instructions to draft a will. The executors were close personal friends of the testator and one of them—Basil Charles Donato—was present when the will was executed, and he heard the will read to the testator and remained silent when he heard the alternative gifts in his favor and in favor of the other two executors, and said nothing. Mr. Donato summoned those who witnessed the will. After execution the decedent remarked: "I wonder if my wishes will be carried out."

All three executors testified that they felt bound in the forum of the conscience to give these legacies to the organizations named in the will.

I must now determine to whom the alternative bequests contained in items five and six shall be awarded. In both cases the gift is "to my executors hereinafter named absolutely."

It is contended that the executors take them under a secret trust for the legatees whose legacies are void, and hence, such being the case, the trust should be declared void and these legacies awarded to the residuary legatee.

It is further argued that the gift to the "executors" is not for their individual interests but to them in a fiduciary capacity and hence should be awarded to the residuary legatee.

In analyzing the first proposition, we should recall what our Supreme Court, speaking through Mr. Justice Simpson, said in Bickley's Estate, 270 Pa. 101, where a somewhat similar question was involved:

"If the question involved was an open one with us, or if it was of modern determination, we would reverse the decree in the present case, for the following reasons: (1st) The decisions are wrong in principle in that they make valid admitted attempts to evade the public policy of the Commonwealth as expressed in her statutes: nemo potest facere per obliquum quod non potest facere per directum. (2d) In Kessler's Est., 221 Pa. 314, 320-1, summarizing previous decisions, we said: 'The Act of 1855 is a remedial statute, and should be construed so as to give effect to the purpose for which it was enacted. While charities may be said to be favorites of the law, . . . yet the law discourages such gifts at or near the time of impending death, when the mental faculties are impaired, the will power broken and the vital forces weakened; because, under such circumstances, the importunities of designing persons, or the terrors of final dissolution, may induce dispositions of property contrary to natural justice, and without regard to the ties of kinship, which, under normal conditions, would be operative on the mind of the testator.' . . . (5th) In all jurisdictions, the courts, tardily recognizing the consequences flowing from their decisions allowing the law to be thus wantonly evaded, have seized upon slight circumstances in order to create a trust (Stirk's Est., supra [232 Pa. 98]; Russell v. Jackson, 10 Hare 204; Edson v. Bartow, 154 N. Y. 199) and then have destroyed it in order to give the estate to the heirs and next of kin, as the statute intended."

In support of the secret trust, it is urged that Mr. Donato was present, heard the will read, saw it executed, and then learned of the alternative gift to him and the other two, and remained silent. This is certainly a situation in which we can say that silence gives consent. Furthermore, the testator said, directly after the act of execution: "I wonder if my wishes will be carried out."

Does this constitute such a secret trust as should be declared void?

In 2 Jarman on Wills 887, 888 (1930 edition), it is said:

"Where the gift is made to A and B as joint tenants, and the trust is communicated to A before the execution of the will, B is also bound by the trust, on the principle that no person can claim an interest under a fraud committed by another. But if the trust is not communicated to A until after the execution of the will, B is not bound.

"If the gift is made to A and B as tenants in common, and the trust is communicated to A, whether before or after the execution of the will, but is not communicated to B, then B's share is not bound by the trust.

"If no communication on the subject of the trust is made to the legatee or devisee during the testator's lifetime, he takes the property for his own benefit; no declaration made by the testator (unless executed as a will) can affect him with a trust."

In Schultz's Appeal, 80 Pa. 396, 405, Mr. Justice Sharswood said:

"The very able and exhaustive opinions, as well of the auditor as of the learned court below, have relieved us from an examination of the English decisions upon the Mortmain Act of that country. They undoubtedly throw a clear and strong light upon the question presented upon this record. They establish two positions: 1. That if an absolute estate is devised, but upon a secret trust assented to by the devisee, either expressly or impliedly, by knowledge and silence before the death of the testator, a court of equity will fasten a trust on him on the ground of fraud, and consequently the Statute of Mortmain will avoid the devise if the trust is in favor of a charity. But 2. If the devisee have no part in the devise, and no knowledge of it until after the death of the testator, there is no ground upon which equity can fasten such a trust on him, even though, after it comes to his knowledge, he should express an intention of

conforming to the wishes of the testator. The latter proposition applies directly to the case now before us."

And at page 406:

". . . Had Reuben Yeakle been present when the will was executed, or the objects of the bequest been communicated to him before the testator's death, and he had held his peace, there would have been some ground for fastening a trust upon him *ex maleficio*, as in Hoge v. Hoge, 1 Watts 163. But nothing of that kind can be pretended here."

In Flood v. Ryan, 220 Pa. 450, 453, Mr. Justice Brown said:

"If the devise to the appellee had been the result of an understanding between him and the testator, that it was to be in trust for the charities named, and the appellee had agreed that he would so take it, his obligation would be not only a moral, but a legal one, to execute the trust, if permitted by the statute. He could not, having so induced the devise, profit through his fraud by insisting that the will gives him the properties absolutely. If a bequest or devise is made in consideration of a promise to execute an invalid or unlawful trust, equity will not allow the legatee or devisee to profit by his fraud, but will raise a resulting trust in favor of the heir or next of kin of the testator. Where, however, there is no bargain between a testator and his legatee or devisee, the gift or devise will be good, although from the impulse of his own mind the legatee or devisee may intend to carry out what he believes to have been the testator's wish. See authorities cited in 28 Am. & Eng. Ency. of Law (2d ed.), 885."

Under this theory of the case, I have reached the conclusion that Mr. Donato's one-third share is impressed with a secret trust for the void uses and hence will be awarded to the residuary legatee. The three executors would take as tenants in common, and hence the shares of the other two would not be affected. Had they taken as joint tenants, the result would be different under the rules enunciated in Jarman, supra. See also Fairchild et al., Executors, v. Edson, 154 N. Y. 199, 61 Am. St. Rep. 609.

I must now examine a further question: The alternative gifts being simply to my executors "hereinafter named absolutely", the question arises, do they take beneficially or as fiduciaries? In the latter event, do they take for the next of kin or for the residuary legatee?

At the common law, upon the death of the testator, all personal property passed to the executor, whose rights and liabilities were matters of slow growth.

Holdsworth, in his monumental History of the English Law, says (vol. 3, p. 583):

"That all the chattels of the deceased were vested by law in the executor, that he took them in a representative capacity, that it did not matter therefore whether he personally was villein or outlaw, or suffering from any other disability, were well settled principles in this period. Even those chattels of the deceased which had been left as a legacy vested in him. The legatee had no title till the executor had consented to the legacy. On the other hand, it was recognized by the ecclesiastical courts that the executor, as he held the place of the Roman *heres*, was entitled to take beneficially property not otherwise disposed of; and this rule was accepted by the common law courts, and applied a good deal more absolutely and rigidly than it was applied in the ecclesiastical courts. It is with respect to the choses in action to which the deceased was entitled that more question arises. There can be no doubt that the maxim *actio personalis moritur cum persona* applied to the right of the executor to sue as well as to his liability to be sued. But the legislature intervened to give the executor rights of action at a much earlier date than it intervened to place him under legal lia-

bility. Perhaps this was due to the fact that the directions of testators in their wills to redress injuries, and the powers of administrators to do their best for the soul of the deceased, rendered the absence of legal liability less onerous in practice than the absence of a legal right to sue would have been."

Jarman on Wills, 696, 697 (1930 edition), states the common-law rule and its modifications by Parliament as follows:

"Before the passing of the Executors Act, 1830, the presumption was that if a testator appointed an executor, he meant him to take beneficially all personal property not disposed of by the will. Since the Act, an executor is a trustee for the next-of-kin of any residue not expressly disposed of by the will, unless it appears by the will that he was intended to take the residue beneficially. If, however, there are no next-of-kin, the presumption in favour of the executor arose (before 1926) as under the old law, but it might be rebutted, in which case the executor was trustee for the Crown. *Prima facie*, therefore, an executor was not beneficially entitled to any property not expressly disposed of by the will, even if the terms of the will showed that the testator considered that it disposed of all his property. But an intention that the executor should take beneficially may appear from the general scheme of the will.

"Since 1925 the executor's right is taken away by section 46, sub-section 1 (vi) of the Administration of Estates Act, 1925."

These acts have no application here, so we revert to the common law that gifts to executors pass to them beneficially unless there is something in the will to overcome this presumption.

I have been able to find only two cases in Pennsylvania, both from this court. In Campbell's Estate, 22 Dist. R. 986, the will gave a legal life estate to a brother and sister jointly and "at their decease the said property revert to my Executor hereinafter named. I nominate, constitute and appoint my nephew Andrew P. Cluley as my executor with full power to act."

In holding that the executor took beneficially, Judge Gest said:

"It is probably just and certainly charitable to the legal profession to suppose that the testatrix made her will without legal advice, and, consequently, we are not disposed to hold that any technical effect should be given to her use of the word 'revert,' which, when properly used, of an estate in lands, signifies to go back or return to the grantor after the termination of the grant. Such a technical use would be improper, as the reversion would not be to the executor, but to the testatrix or her heirs, and we are of the opinion that she used the word loosely to mean that, on the death of the life tenants, her estate should go to or vest in another. Here she says it shall 'revert to my executor.' Whether in such a gift the word 'executor' is used to signify the person or merely the officer is more doubtful, and has been discussed in a number of cases, some of which were cited and relied upon by the counsel for the heirs.

"In Saltmarsh v. Barrett, 29 Beavan, 474, a testator gave legacies of nineteen guineas to each of his good friends, mentioning them by name and appointing them executors of his will. He then gave and bequeathed the whole of his estate absolutely to the executors by name, charged with certain legacies, and authorizing them to deduct their costs, charges and expenses out of any part of his estate. Romilly, M.R., admitting that he was in great doubt, held that the executors took the residue as trustees for the next of kin. An appeal was heard by L.JJ. Knight-Bruce and Turner, 3 DeG., F. & J. 278, the former of whom disagreed with the Master of the Rolls and the latter agreed with him, so that the appeal was dismissed by a divided court. The grounds of the opinion favorable to the next of kin were, first, that the testator gave legacies of nineteen

guineas to his good friends, the executors, so that the testator, upon the theory that they took the residue, was at the same time giving them the part and the whole of the same estate; and, secondly, which was the controlling feature of the case, the testator directed that the costs which the executors might incur should be payable out of any moneys that should come into their hands, which would follow as of course if they took the residue beneficially; and, further, while the bequest in this case was to the executors 'absolutely,' this, as was pointed out, did not necessarily mean 'beneficially.'

"In Forster v. Winfield, 142 N. Y. 327, the testator gave the residue to his executors as joint tenants, and added that he had entire confidence that they would make such disposition of the residue as they knew would meet with his approval. Earle, J., held that the gift to them as joint tenants and the survivor of them indicated that he referred to them in their official capacity, and the last clause of the will showed that the gift was upon some undisclosed trust. And in Christman v. Roesch, 132 N. Y. App. Div. 22 [affirmed, 198 N. Y. 538], the direction that the executor, to whom a pecuniary legacy was given, should use all the rest and residue at the best advantage, being added to a power of sale given that he might pay certain bequests, convinced the court that he took no beneficial interest.

"But these cases, and others that we have examined, are so widely different in their facts that we cannot regard them as controlling us in our construction of this will. No trusts of any kind are here imposed upon the executor, and no duty enjoined. The presumption against the disherison of the heirs is met by the counter-presumption against any intention to die intestate, and can hardly have place where the executor is himself an heir, being a nephew, described as such in the will and standing in as close relationship to the testatrix, who was a widow without lineal heirs, as are those who contest his right. Upon a careful consideration of the case, we think it far more probable that the testatrix used the word 'executor' as a mere description of the person whom she intended to benefit, and whom in the next line she appoints as executor, with full power to act, than that she should deliberately choose to die intestate after the decease of her brother and sister."

In Kent's Estate, 13 D. & C. 196, the testator appointed "my dearly beloved cousin, Mary Elizabeth Davis, as my Executrix", and then gave all the rest, residue, and remainder "to my Executrix, Mary Elizabeth Davis."

In construing this will, Judge Gest said:

"The question presented is whether Mary Elizabeth Davis takes the estate as an individual or whether the estate is given to her as executrix, in which case there would follow a resulting trust in favor of the next of kin.

"Similar questions of interpretation have arisen in numerous cases, from which it does not seem possible to extract any general rule. Everything depends upon the phraseology of the particular will and intention of the testator as gathered from the consideration of the will as a whole. In the present case, the testatrix simply appoints 'my dearly beloved cousin, Mary Elizabeth Davis, as my Executrix,' and devises her entire estate (after the payment of debts) to 'my executrix, Mary Elizabeth Davis.' In my opinion, the word 'executrix' is used as *nomen descriptivum*, as there is nothing to show that the testatrix intended Mary Elizabeth Davis to take the estate simply to distribute it among the next of kin, of whom Mary Elizabeth Davis is one. If the testatrix had intended to die intestate as to the distribution of her estate, she would naturally have contented herself with appointing Mary Elizabeth Davis as executrix. It should be noted that she evidently had special affection for Mary Elizabeth Davis, as she styles her 'my dearly beloved cousin.' In the cases cited on behalf

of the next of kin, there is always something added to the gift to the executor, as in Thomas *v.* Anderson, 245 Fed. Repr. 642, where, following the devise to the executor, William E. Thomas, are the words, 'to convey, bargain, sell, distribute or dispose of as he may choose to do with, following as nearly as may be possible for him to do any instruction, directions or requests that I may hereafter give, make or request.' The court, in a very able opinion, held that this was not a gift to the devisee in his private capacity, but as executor in trust, and, as the testator had failed to designate the beneficiaries of the trust, the estate was treated as intestate property and disposed of as if no such will had been made. So, in General Relief Fund *v.* Sharpe, 43 App. Cases, D. of C. 126, the gift was to 'the executors to distribute the residue of the estate among such persons as the executors may deem proper,' and the court held that the residue was given in trust for the next of kin, as no other persons were mentioned. This case would probably not be followed in this State: Beck's Appeal, 116 Pa. 547. And in Davison v. Wyman, 214 Mass. 192, the testatrix directed her residuary estate to be disposed of by her executors at their absolute discretion and according to their own judgment, and the court held that the attempted trust was too indefinite to be carried out, and, therefore, a resulting trust arose for the benefit of the next of kin. Stress is also laid upon the fact that the bequest is not to Mary Elizabeth Davis, my executrix, but 'to my executrix, Mary Elizabeth Davis,' but I do not think that the mere order of the words is very important. On the other hand were cited Hollohan's Will, [52 Hun. 614,] 5 N. Y. Supp. 342, holding that a bequest 'to my executor, Rev. Thomas Taffy,' was a bequest to him personally. And see, also, Gilman *v.* Gilman, [99 Conn. 598,] 122 Atl. Repr. 386, a Connecticut case, where the residue was given to the executors to be distributed at their discretion. However, in my opinion, Campbell's Estate, 22 Dist. R. 986, relieves me from any further discussion. There the devise was to a brother and a sister of the testator by name 'to have and to hold jointly and at their decease the said property revert to my executor,' who was then appointed by name. We said, after citing some cases: 'No trusts of any kind are here imposed upon the executor, and no duty enjoined. The presumption against the dishersion of the heirs is met by the counter-presumption against any intention to die intestate, and can hardly have place where the executor is himself an heir, being a nephew, described as such in the will and standing in as close relationship to the testatrix, who was a widow without lineal heirs, as are those who contest his right.' "

I have very fully quoted these opinions because, so far as I am able to find, they are the only ones in this Commonwealth.

Applying the principles herein enunciated, I find the executors have the title, and in order to prevent an intestacy they take beneficially, unless the will otherwise disposes of these alternative legacies. The foundation of the principle is title, and the executors take, in the absence of a contrary intent, to prevent an intestacy.

There is a residuary clause in the instant will, hence the executors will be directed to pay these legacies to Rev. Umberto Biga—the residuary legatee. The presumption that the executors are beneficially entitled is overcome by the residuary gift.

While not controlling, I might add that unless this interpretation prevails there will be nothing to pass under the residuary clause. . . .

NOTE.—Exceptions filed to the foregoing adjudication were subsequently withdrawn.